UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLAY KALLMAN, | Case No. 21-cv-2183 |
| Plaintiff, | |
| v. | |
| JETBLUE AIRWAYS CORPORATION, | |
| Defendant. | |

## COMPLAINT

Plaintiff, Clay Kallman, by his attorneys, Seham, Seham, Meltz & Petersen, LLP, as and for his complaint against the Defendant, JetBlue Airways Corporation, alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action against his former employer, JetBlue Airways Corporation, pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq., and the New York State Human Rights Law, Executive Law § 290 et seq., for discriminatory conduct by the Defendant against the Plaintiff that resulted in his unlawful termination on March 16, 2020. Plaintiff was discriminated against on the basis of his disability (Type II Diabetes), religion (Jewish), age (60), and sexual orientation (heterosexual).

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, namely, the

Americans with Disabilities Act, Title VII of the Civil Rights Act, and the Age Discrimination in Employment Act. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant, JetBlue Airways Corporation, resides in this district.

## EEOC FILING AND ADMINISTRATIVE PROCEDURES

4. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 20, 2020. On April 6, 2021, the EEOC issued a Notice of Right to Sue. Plaintiff filed this action within ninety (90) days of receiving his Notice of Right to Sue from the EEOC. A true and correct copy of the Notice of Right to Sue is attached as Exhibit A.

## PARTIES

5. At all times relevant hereto, plaintiff, Clay Kallman ("Plaintiff" or "Kallman"), was and is a resident and domiciliary of the State of Florida, with his principal residence located at 2500 Lake Wade Court, Orlando, FL 32806

6. At all times relevant hereto, defendant, JetBlue Airways Corporation ("JetBlue" or the "Company") was and is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business located at 27-01 Queens Plaza North, Long Island City, New York 11101, in the County of Queens.

## STATEMENT OF FACTS

7. Kallman was hired by the defendant on March 30, 2011 as a Flight Attendant after two decades of honorable service as a firefighter and paramedic with Orange County Fire and Rescue in Orange County, Florida.

8. For nearly seven years, Kallman fulfilled his duties as a Flight Attendant without incident. The only instance of behavior that resulted in any manner of employer intervention involved a post on the JetBlue Tell Inflight intranet in which Kallman criticized the rollout of a new cart program for serving food on or around June 10, 2018. Kallman was required to attend a meeting on June 20, 2018, with members of the JetBlue People Department and other JetBlue representatives including Wanda Garcia, Crew Relations Field Generalist, and Lenda Reyes, Kallman's team leader.

9. In the June 20 meeting, Kallman informed those present that other Flight Attendants and Pilots had been making anti-Semitic comments about Jewish passengers. On flights with mostly Jewish passengers, they would frequently remark how "smelly, loud, rude and cheap Jews are," how they "hated them," that the Jewish passengers' children are "uncontrolled animals," that they want to pray on the airplane, and questioned "why can't they just eat the food we give them?" The Flight Attendants and Pilots who made such anti-Semitic comments did not want to work those flights with mostly Jewish passengers because of them. These comments were made in Kallman's presence with blatant disregard for the fact that he himself is Jewish, a fact that his crew mates were aware of, and created for Kallman a hostile work environment due to the pervasiveness of these comments.

10. Kallman was assured at the meeting that his allegations would be investigated and that a letter would be sent out to the Flight Attendants and Pilots indicating that management was aware of the situation and that such behavior is not acceptable. Although a JetBlue corporate representative called Kallman inquiring about his allegations and reassuring him that action would be taken, Kallman was never contacted again about the matter and the promised letter

instructing Flight Attendants and Pilots to refrain from anti-Semitic behavior was never sent out. Consequently, the anti-Semitic conduct about which Kallman complained continued unabated.

11. On June 27, 2019, Kallman was diagnosed with Type II Diabetes and began taking medication to regulate his blood sugar. His physician put him on a drug called Metformin, to be taken twice a day at a 500 milligram dosage.

12. On January 3, 2020, Kallman worked a flight to Buffalo, New York, that was delayed a few hours into the early morning of January 4, 2020. JetBlue provided lodging for Kallman at the Hyatt Regency Hotel in downtown Buffalo.

13. On January 4, 2020, Kallman went to a restaurant in the downtown Buffalo area in the late afternoon to watch the professional Buffalo hockey and football games that were taking place. He began to feel ill shortly after and decided that it would be a good idea to take a taxi back to the Hyatt Regency Hotel since he had to work early the next morning.

14. Kallman arrived at the Hyatt sometime in the early evening on January 4, 2020, and, feeling even worse, decided to get some food in his system before retiring for the night.

15. When Kallman arrived at the hotel restaurant, he was exhibiting signs typical of a diabetic episode: disorientation, sluggish movement, impediments to speech, and "acetone breath" – a condition where the body begins to burn fat instead of glucose, resulting in potentially dangerous byproducts that are then excreted through the respiratory tract that smell sweet, acetone-like and alcoholic. Misperceiving his diabetic episode as inebriation, the hotel restaurant refused to serve Mr. Kallman food, thereby aggravating the diabetic episode.

16. When Kallman reiterated his request for the food necessary to address his condition, the hotel staff contacted the Buffalo police and had Kallman arrested for criminal trespassing.

17. Kallman spent at least five hours in police custody without medical attention, blood sugar monitoring or nourishment of any kind until he was released somewhere around two in the morning (2:00 A.M.) on January 5, 2020.

18. Despite the allegations made by the Hyatt hotel staff that Kallman was inebriated, Kallman never underwent, nor was he asked to submit to, any alcohol or blood sugar testing before or after being taken into custody.

19. The criminal trespass charge initiated by the hotel was subsequently disposed of by an adjournment in contemplation of dismissal (ACD). Pursuant to the ACD, the charge has been dismissed.

20. On January 5, 2020, Kallman was scheduled to work a trip pairing for which he was to report at 6:00 a.m. He was contacted on his way to the airport by JetBlue Crew Services and informed that he would not be flying and to remain in Buffalo given the events that took place only a few hours earlier. Kallman remained in Buffalo until the next morning.

21. On or around January 6, 2020, Kallman attended a meeting addressing the incident at the Hyatt with members of the JetBlue People Department that included Team Leader David Davis in Orlando, Florida.

22. Davis assured Kallman after the meeting that all he needed to do was provide proof of his Type II Diabetes diagnosis to back up Kallman's contention that he did indeed suffer a diabetic episode on January 4, 2020.

23. On or around February 13, 2020, Kallman began an email correspondence with Wanda Garcia, JetBlue Crew Relations Field Generalist, in order to confirm his Type II Diabetes diagnosis.

24. Garcia had also participated in the June 2018 meeting where Kallman alerted management to the rampant anti-Semitism among JetBlue's Flight Attendants and Pilots.

25. Garcia requested a physician's note to substantiate Kallman's claim that the behavior he exhibited on January 4, 2020, was indeed the result of his diabetic disability, which Kallman provided to JetBlue on February 24, 2020.

26. JetBlue continued to assign Kallman, and Kallman continued to fly, trip pairings in the months of January, February and March. He performed his duties as a Flight Attendant on numerous flights in the period between January 4, 2020 and his suspension on March 15, 2020. He was not issued any notice of discipline during that period of time.

27. On March 15, 2020, JetBlue notified Kallman that he would be suspended without pay while an investigation was being conducted into the January 4, 2020 incident at the Hyatt Regency Hotel in Buffalo. JetBlue's suspension letter promised a "full and fair investigation."

28. On March 16, 2020 – just one day after being informed that the circumstances surrounding his suspension required a "full and fair investigation" and more than two months after the Buffalo incident – Kallman was issued a letter of termination from JetBlue. JetBlue sought no further information from Kallman from the time of the issuance of the suspension letter through the time of the issuance of his termination letter. The March 16 letter provided no basis for Kallman's termination other than a non-specific reference to a "violation of company policy."

## COUNT I
### Violation of the Americans with Disabilities Act
### Disparate Treatment

29. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "28" of the Complaint as if more fully set forth herein.

30. Plaintiff suffers from a disability (Type II Diabetes) as defined by the Americans with Disabilities Act, as amended, because at all times relevant to the allegations herein he had and has a physical impairment that substantially limits one or more major life activities.

31. Diabetes is an impairment that "will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity. 29 C.F.R. §§ 1630.2(j)(3)(ii). "[D]iabetes substantially limits endocrine function." 29 C.F.R. §§ 1630.2(j)(3)(iii).

32. Plaintiff's diabetes substantially limits endocrine function and substantially limits major life activities such as performing manual tasks, eating, sleeping, walking, standing, lifting, bending, speaking, concentrating, thinking, communicating, and working.

33. In the alternative, if Plaintiff is not found to have a physical impairment that substantially limits one or more major life activities, he was regarded as having such an impairment because Defendant was advised of his diabetic condition and Defendant subjected Plaintiff to suspension and termination because of his perceived diabetic condition.

34. Plaintiff was treated in a disparate manner as a result of having a diabetic condition that substantially limits one or more major life activities or being regarded as having such an impairment, and was therefore caused to suffer adverse employment actions, including suspension without pay and termination.

35. Plaintiff's disability is a significant reason for his being treated in a disparate manner.

36. As a result thereof, the defendant discriminated against the plaintiff based upon his disability, in violation of the Americans with Disabilities Act.

7

37. As a result of the defendant's wrongful conduct, the plaintiff has been caused to suffer severe economic and emotional damages in the sum of ONE MILLION ($1,000,000) DOLLARS.

## COUNT II
### Violation of the New York State Human Rights Law
### Disparate Treatment Based on Disability

38. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "37" of the Complaint as if more fully set forth herein.

39. Plaintiff suffers from a disability (Type II Diabetes) as defined by New York State Executive Law § 292(21), because Plaintiff's diabetes is a physical or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function and is demonstrable by medically accepted clinical or laboratory diagnostic techniques.

40. In the alternative, Plaintiff suffers from a disability as defined by New York State Executive Law § 292(21), because he had a condition regarded by Defendant as such an impairment.

41. Plaintiff was treated in a disparate manner as a result of having such an impairment or having a condition regarded by Defendant as such an impairment, and was therefore caused to suffer adverse employment actions, including suspension without pay and termination.

42. Plaintiff was treated in a disparate manner as a result of his disability and was therefore caused to suffer adverse employment actions, including suspension without pay and termination.

43. Plaintiff's disability is a significant reason for his being treated in a disparate manner.

44. As a result thereof, the defendant discriminated against the plaintiff based upon his disability, in violation of the New York State Human Rights Law.

45. As a result of the defendant's wrongful conduct, the plaintiff has been caused to suffer severe economic and emotional damages in the sum of ONE MILLION ($1,000,000) DOLLARS.

## COUNT III
### Violation of the Americans with Disabilities Act
### Failure to Accommodate

46. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "45" of the Complaint as if more fully set forth herein.

47. Plaintiff suffers from a disability (Type II Diabetes) as defined by the Americans with Disabilities Act.

48. On or about January 6, 2020, plaintiff informed JetBlue of his Type II Diabetes diagnosis. Therefore, defendant was aware of plaintiff's disability.

49. As a result of being aware of plaintiff's disability, JetBlue was obligated to provide plaintiff with a reasonable accommodation for his known disability and to enter into a good faith interactive discussion with plaintiff.

50. Defendant failed to provide plaintiff with a reasonable accommodation, as required by the Americans with Disabilities Act.

51. Defendant failed to enter into a good faith interactive discussion with plaintiff, as required by the Americans with Disabilities Act.

52. As a result of the defendant's failure, the plaintiff has been caused to suffer economic and emotional harm.

53. As a result of the defendant's wrongful conduct, the plaintiff has been caused to suffer severe economic and emotional damages in the sum of ONE MILLION ($1,000,000) DOLLARS.

## COUNT IV
### Violation of the New York State Human Rights Law
### Failure to Accommodate

54. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "53" of the Complaint as if more fully set forth herein.

55. Plaintiff suffers from a disability (Type II Diabetes) as defined by the New York State Human Rights Law.

56. On or about January 6, 2020, plaintiff informed JetBlue of his Type II Diabetes diagnosis. Therefore, defendant was aware of plaintiff's disability.

57. As a result of being aware of plaintiff's disability, JetBlue was obligated to provide plaintiff with a reasonable accommodation for his known disability and to enter into a good faith interactive discussion with plaintiff.

58. Defendant failed to provide plaintiff with a reasonable accommodation, as required by the New York State Human Rights Law.

59. Defendant failed to enter into a good faith interactive discussion with plaintiff, as required by the New York State Human Rights Law.

60. As a result of the defendant's failure, the plaintiff has been caused to suffer economic and emotional harm.

61. As a result of the defendant's wrongful conduct, the plaintiff has been caused to suffer severe economic and emotional damages in the sum of ONE MILLION ($1,000,000) DOLLARS.

## COUNT V
## Violation of Title VII
## Religious Discrimination

62. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "61" of the Complaint as if more fully set forth herein.

63. Title VII of the Civil Rights Act provides that it is an unlawful employment practice for an employer "to discharge, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion."  42 U.S.C. § 2000e-2(a)(1).

64. Defendant suspended and discharged Plaintiff because of his Jewish religion.

65. Defendant's conduct constitutes discriminatory treatment on the basis of his religion in violation of 42 U.S.C. § 2000e-2(a)(1).

66. As a result of the defendant's wrongful conduct, the plaintiff has been caused to suffer severe economic and emotional damages in the sum of ONE MILLION ($1,000,000) DOLLARS.

## COUNT VI
## Violation of the New York State Human Rights Law
## Religious Discrimination

67. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "66" of the Complaint as if more fully set forth herein.

68. The New York State Human Rights Law provides that it is an unlawful discriminatory practice for an employer to discharge or discriminate against any individual in compensation or in terms, conditions or privileges of employment because of such individual's creed.  N.Y. Executive Law, § 296(1)(a).

11

69. Defendant suspended and discharged Plaintiff because of his creed, namely, his Jewish religious beliefs.

70. Defendant's conduct constitutes discriminatory treatment on the basis of his religion in violation of the New York Human Rights Law.

71. As a result of the defendant's wrongful conduct, the plaintiff has been caused to suffer severe economic and emotional damages in the sum of ONE MILLION ($1,000,000) DOLLARS.

### COUNT VII
### Violation of Title VII
### Hostile Work Environment

72. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "71" of the Complaint as if more fully set forth herein.

73. Anti-Semitic comments by other Flight attendants and Pilots, as reported by Kallman to JetBlue, were severe and pervasive, and created a hostile work environment.

74. Plaintiff perceived his work environment to be hostile and abusive because of his religion.

75. JetBlue failed to take action to prevent and promptly correct the anti-Semitic harassment, in violation of Title VII.

76. As a result of the defendant's failure, the plaintiff has been caused to suffer severe emotional harm.

77. As a result of the defendant's wrongful conduct, the plaintiff has been caused to suffer severe emotional damages in the sum of ONE MILLION ($1,000,000) DOLLARS.

## COUNT VIII
### Violation of the New York State Human Rights Law
### Hostile Work Environment

78. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "77" of the Complaint as if more fully set forth herein.

79. Anti-Semitic comments by other flight attendants and pilots, as reported by Kallman to JetBlue, subjected plaintiff to harassment based on his religion and created a hostile work environment in violation of the New York State Human Rights Law.

80. As a result of the harassment, the plaintiff has been caused to suffer severe emotional harm.

81. As a result of the defendant's wrongful conduct, the plaintiff has been caused to suffer severe emotional damages in the sum of ONE MILLION ($1,000,000) DOLLARS.

## COUNT IX
### Violation of Title VII
### Retaliation

82. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "81" of the Complaint as if more fully set forth herein.

83. Defendant retaliated against plaintiff for reporting the hostile work environment based on religious discrimination, including by suspending and terminating him, in violation of Title VII.

84. As a result of the retaliation, the plaintiff has been caused to suffer severe economic and emotional harm.

85. As a result of the defendant's wrongful conduct, the plaintiff has been caused to suffer severe economic and emotional damages in the sum of ONE MILLION ($1,000,000) DOLLARS.

## COUNT X
### Violation of the New York State Human Rights Law
### Retaliation

86. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "85" of the Complaint as if more fully set forth herein.

87. Defendant retaliated against plaintiff for reporting the hostile work environment based on religious discrimination, including by suspending and terminating him, in violation of the New York State Human Rights Law.

88. As a result of the retaliation, the plaintiff has been caused to suffer severe economic and emotional harm.

89. As a result of the defendant's wrongful conduct, the plaintiff has been caused to suffer severe economic and emotional damages in the sum of ONE MILLION ($1,000,000) DOLLARS.

## COUNT XI
### Violation of the Age Discrimination in Employment Act

90. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "89" of the Complaint as if more fully set forth herein.

91. Defendant discriminated against the plaintiff on the basis of plaintiff's age (60 years old).

92. Plaintiff was treated in a disparate manner as compared to other employees.

93. Plaintiff was fired from his job.

94. A motivating factor for the treatment of the plaintiff was his age.

95. Plaintiff has been caused to suffer severe economic and emotional damages as a result of defendant's wrongful conduct.

96. Defendant discriminated against the plaintiff with respect to his employment terms, working conditions, and privileges of employment in violation of the Age Discrimination in Employment Act.

97. But for the plaintiff's age, the plaintiff would not have been subjected to discrimination.

98. As a result of the defendant's wrongful conduct, the plaintiff has been caused to suffer severe economic and emotional damages in the sum of ONE MILLION ($1,000,000) DOLLARS.

## COUNT XII
### Violation of the New York State Human Rights Law
### Age Discrimination

99. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "98" of the Complaint as if more fully set forth herein.

100. Defendant discriminated against the plaintiff on the basis of plaintiff's age (60 years old).

101. Plaintiff was treated in a disparate manner as compared to other employees.

102. Plaintiff was fired from his job.

103. A motivating factor for the treatment of the plaintiff was his age.

104. Plaintiff has been caused to suffer severe economic and emotional damages as a result of defendant's wrongful conduct.

105. Defendant discriminated against the plaintiff with respect to his employment terms, working conditions, and privileges of employment in violation of the New York State Executive Law § 296 et seq.

106. But for the plaintiff's age, the plaintiff would not have been subjected to discrimination.

107. As a result of the defendant's wrongful conduct, the plaintiff has been caused to suffer severe economic and emotional damages in the sum of ONE MILLION ($1,000,000) DOLLARS.

## COUNT XIII
### Violation of the New York State Human Rights Law
### Sexual Orientation Discrimination

108. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "107" of the Complaint as if more fully set forth herein.

109. The New York State Human Rights Law provides that it is an unlawful discriminatory practice for an employer to discharge or discriminate against any individual in compensation or in terms, conditions or privileges of employment because of such individual's sexual orientation.  N.Y. Executive Law, § 296(1)(a).

110. Defendant suspended and discharged Plaintiff because of his sexual orientation (heterosexual).

111. Defendant's conduct constitutes discriminatory treatment on the basis of his sexual orientation in violation of the New York Human Rights Law.

112. As a result of the defendant's wrongful conduct, the plaintiff has been caused to suffer severe economic and emotional damages in the sum of ONE MILLION ($1,000,000) DOLLARS.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

a) Declaring that the actions, patterns and practices of the defendant, its agents, servants and all those acting in concert with them, constituted, and does constitute, a violation of the Americans with Disabilities Act, Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, and the New York State Human Rights Law;

b) Awarding damages for economic and emotional injuries, in the amounts stated above, as well as interest and costs;

c) Awarding attorneys' fees, and the costs and disbursements of this action; and

d) Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated: White Plains, New York
April 20, 2021

Respectfully submitted,

Stanley J. Silverstone
Seham, Seham, Meltz & Petersen, LLP
199 Main Street, 7th Floor
White Plains, NY 10601
Tel. (914) 997-1346
Fax (914) 997-7125
ssilverstone@ssmplaw.com

*Attorneys for Plaintiff*

17