UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CLAY KALLMAN,**

        **Plaintiff,**

v.                                                                          Case No. 6:21-cv-1081-CEM-LHP

**JETBLUE AIRWAYS
CORPORATION,**

        **Defendant.**

                                    /

## ORDER

THIS CAUSE is before the Court on Defendant's Motion to Dismiss ("Motion," Doc. 40) and Plaintiff's Response (Doc. 51). For the reasons set forth below, the Motion will be granted in part and denied in part.

### I. BACKGROUND

Plaintiff is a heterosexual, Jewish man in his sixties who has type II diabetes. (Am. Compl., Doc. 28, at 2). He was formerly employed by Defendant as a flight attendant. (*Id.* at 3). Plaintiff alleges that he was subject to a hostile work environment and that his employment was terminated due to religious, age, disability, and sex discrimination and in retaliation for complaining about the hostile work environment. (*See id.* at 8–20). The relevant allegations taken from Plaintiff's Amended Complaint are as follows.

On June 20, 2018, Plaintiff complained to Defendant's representatives that co-workers, including flight attendants and pilots, had made anti-Semitic comments about Jewish passengers, including that they were "smelly, loud, rude and cheap," that their children were "uncontrolled animals," that the co-workers "hated" the Jewish passengers, that the co-workers complained about Jewish passengers' desire to pray on the airplane, and that the co-workers did not want to work flights with mostly Jewish passengers. (*Id.* at 4). At the meeting, Plaintiff was assured that his allegations would be investigated, and later a corporate representative contacted Plaintiff about the allegations. (*Id.*). But no remedial measures were taken, and "the anti-Semitic conduct about which [Plaintiff] complained continued unabated." (*Id.* at 5).

Nearly two years later, in January 2020, a flight that Plaintiff worked was delayed, requiring Plaintiff to stay in a hotel provided by Defendant. (*Id.*). Plaintiff began to feel ill and started exhibiting signs of a diabetic episode, including "disorientation, sluggish movement, impediments to speech, and 'acetone breath.'" (*Id.*). To address this issue, Plaintiff went to get food at the hotel restaurant, but "[m]isperceiving his diabetic episode as inebriation, the hotel restaurant refused to serve [Plaintiff] food, thereby aggravating the diabetic episode." (*Id.* at 6). Upon Plaintiff's repeated request for food, the hotel contacted the police and had Plaintiff

arrested for criminal trespass. (*Id.*). Plaintiff was held in police custody until 2:00 AM, when he was released. (*Id.*).

On his way to the airport that morning to report for work, Plaintiff was contacted by Defendant and informed that he would not be flying due to the previous night's events. (*Id.* at 7). Two days later, Plaintiff attended a meeting with Defendant's representatives to address the incident, where he was informed that all he needed to do was to provide proof of his diabetes diagnosis. (*Id.*). Plaintiff provided the requested documentation. (*Id.*).

Plaintiff continued to work flights for Defendant until March 15, 2020, when Defendant notified Plaintiff that he was suspended without pay pending an investigation of the January incident. (*Id.* at 8). The next day, Plaintiff was terminated for "violation of company policy." (*Id.*).

On March 20, 2020, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, and on April 6, 2021, Plaintiff was issued a Notice of Right to Sue. (*Id.* at 2). Plaintiff now brings the following claims: disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, (Count I); disability discrimination under the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01 *et seq.*, (Count II); failure to accommodate under the ADA (Count III); failure to accommodate under the FCRA (Count IV); religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000e *et seq.*, (Count V); religious discrimination under the FCRA (Count VI); hostile work environment under Title VII (Count VII); hostile work environment under the FCRA (Count VIII); retaliation under Title VII (Count IX); retaliation under the FCRA (Count X); age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, (Count XI); age discrimination under the FCRA (Count XII); and sex discrimination based on his sexual orientation under the FCRA (Count XIII).

## II. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Ordinarily, in deciding a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

### III.  ANALYSIS

#### A.  Shotgun Pleading

As an initial matter, Defendant asserts that Plaintiff's Amended Complaint is a shotgun pleading. "The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'" *Beckwith v. Bellsouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1129–30 (11th Cir. 2001)). The Eleventh Circuit has defined four types of shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015). Defendant argues that Plaintiff's Amended Complaint falls into two of these categories: (1) that it contains "multiple counts [and] each count adopts the allegations of all preceding counts" and (2) that it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* The Amended Complaint is not a

shotgun pleading. The Amended Complaint only incorporates factual allegations into each count, it does not incorporate other counts. (Doc. 28 at 8–20). And, the factual allegations are set forth with sufficient clarity for the Court, and Defendant, to understand the basis of Plaintiff's claims. The Amended Complaint will not be dismissed as a shotgun pleading. The Court now turns to Defendant's substantive arguments.

### B. Legal Framework

All of Plaintiff's claims are analyzed under the *McDonnell Douglas* framework. *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215 (11th Cir. 2021) (ADA); *Ray v. City of Tallahassee*, 664 F. App'x 816, 818 (11th Cir. 2016) (FCRA); *Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir. 1997) (Title VII); *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015) (ADEA); *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020) (retaliation); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff has the initial burden to establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield*, 115 F.3d at 1562. If the plaintiff establishes a prima facie case by a preponderance of the evidence, a presumption of

discrimination arises. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54 (1981).

Once the plaintiff has presented a prima facie case and its attendant presumption arises, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802. If the employer meets this burden, "the presumption of discrimination is eliminated and the plaintiff has the opportunity to come forward with evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (quotation omitted). "An employer's stated reason is not a pretext unless it is shown that both: (1) the reason was false; and (2) the real reason was unlawful." *Vega v. Invsco Grp., Ltd.*, 432 F. App'x 867, 871 (11th Cir. 2011) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

However, "establishing the elements of the *McDonnell Douglas* framework is not" always necessary. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). If, despite failing to precisely establish the *McDonnell Douglas* elements, the plaintiff provides sufficient allegations "concerning the employer's discriminatory intent"—i.e., "a convincing mosaic of circumstantial evidence that

would allow a jury to infer intentional discrimination by the decisionmaker"—the plaintiff's claims can move forward. *Id.* (quotation and footnote omitted).

### C. Disparate Treatment Claims

#### 1. *Age and Sex Discrimination Claims*

Plaintiff has failed to provide any allegations relating to his age and sex discrimination claims. Plaintiff has merely alleged that he is a sixty-year-old heterosexual man. The Amended Complaint contains no allegations of improper treatment or statements related to Plaintiff's sexual orientation or age, nor does it allege that there were any comparators of different sexual orientation or ages that were treated differently than him. There is simply no basis in the Amended Complaint for any inference of discrimination based on Plaintiff's sexual orientation or age. These claims will be dismissed.

#### 2. *Religious Discrimination*

Similarly, Plaintiff has not established a prima facie claim for religious discrimination. To establish a prima facie case of disparate treatment religious discrimination,[1] a "plaintiff must show: (1) []he is a member of a protected class; (2) []he was qualified for [his] position; and (3) []he suffered an adverse employment action under circumstances permitting an inference of unlawful discrimination."

---

[1] A plaintiff can also bring a failure to accommodate religious discrimination claim, which involves a different prima facie case, *see Walker v. Indian River Transp. Co.*, 741 F. App'x 740, 746 (11th Cir. 2018), but there is no such claim set forth in Plaintiff's Amended Complaint.

*Marshall v. Aryan Unlimited Staffing Sol.*, No. 12-81404-HURLEY, 2013 U.S. Dist. LEXIS 30308, at *11 (S.D. Fla. Mar. 6, 2013).

For purposes of this Motion, Defendant does not dispute the first two elements. As to the last, the only allegations relating to Plaintiff's religious discrimination claims are that non-supervisory employees made derogatory statements about Jewish passengers. There are no allegations that Plaintiff's supervisors or any decision-makers related to Plaintiff's termination made any such comments, nor has Plaintiff identified a non-Jewish comparator. Where a plaintiff is unable "to present evidence of a comparator," he can still state a prima facie case but must present sufficient "circumstantial evidence that would allow a jury to infer intentional discrimination *by the decisionmaker*." *See Gibson v. JetBlue Airways Corp.*, No. 20-10943, 2021 U.S. App. LEXIS 34253, at *18 (11th Cir. Nov. 18, 2021) (emphasis added). There are simply no allegations that permit an inference that any decisionmaker involved in Plaintiff's termination discriminated against Plaintiff due to his religion. These claims must be dismissed.

### 3. Disability Discrimination

"To establish a prima facie case of disability discrimination, the plaintiff must show '(1) a disability, (2) that [he] was otherwise qualified to perform the job, and (3) that [he] was discriminated against based upon the disability.'" *Wood v. Gilman Bldg. Prods.*, 769 F. App'x 796, 799–800 (11th Cir. 2019) (quoting *Cleveland v.*

*Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004)). Defendant does not dispute that Plaintiff has satisfied the first two elements, but it argues that Plaintiff has not alleged any facts sufficient to support a claim that Plaintiff was discriminated against based on his disability. The Court disagrees. Plaintiff has alleged that Defendant terminated him shortly after Plaintiff notified Defendant of his disability and explicitly based upon an incident involving that disability. This is sufficient to meet Plaintiff's low burden at this stage of the litigation.

Defendant also asserts that the allegations in the Amended Complaint establish that Defendant had a legitimate, non-discriminatory reason to terminate Plaintiff—specifically his arrest for criminal trespass—which was not pretextual. Based on the limited allegations here, the Court cannot conclude at this stage of the litigation that Defendant's proffered reason is not pretextual. Plaintiff alleges that Defendant first told Plaintiff that it would not discipline him if he provided proof of his disability, and then after providing that proof, Defendant terminated Plaintiff's employment. In addition to Defendant's alleged changing stories, Defendant continued to allow Plaintiff to work despite his purported violation of Defendant's code of conduct until after Plaintiff provided Defendant with proof of his disability. At this stage of the litigation, without a full record, Defendant has not shown that Plaintiff's disability discrimination claims must be dismissed.

### D. Failure to Accommodate Claims

"To state a prima facie claim for failure to accommodate under the ADA [and FCRA], the plaintiff must show that: (1) []he is disabled; (2) []he is a qualified individual; and (3) []he was discriminated against by way of the defendant's failure to provide a reasonable accommodation." *Bagwell v. Morgan Cnty. Comm'n*, 676 F. App'x 863, 865 (11th Cir. 2017) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)); *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263–64 (11th Cir. 2007) ("Claims raised under the Florida law are analyzed under the same framework as the ADA."). Although not entirely clear, Defendant appears to presume that Plaintiff has sufficiently alleged his prima facie case, but argues that the claims still fail because Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff—his arrest—which Defendant labels his "misconduct." (Doc. 40 at 22).

Defendant cites several cases for the proposition that the ADA and FCRA do "not require that employers countenance dangerous misconduct, even if that misconduct is the result of a disability." *Todd*, 998 F.3d at 1217. And, as such, Defendant asserts that it was not required to accommodate Plaintiff's disability by not firing him for such misconduct. First, taking all inferences in favor of Plaintiff, as the Court is required to do at this stage, it is not clear whether Plaintiff's actions rise to the level of misconduct referenced in the cases cited by Defendant. *Id.* at

1209, 1211–12 (applying this reasoning where a school teacher discussed in detail threats to kill herself and her son, made threats against administrators, and over-medicated herself with Xanax while at school); *J.A.M. v. Nova Se. Univ., Inc.*, 646 F. App'x 921, 923 (11th Cir. 2016) (applying the same rationale under a different provision of the ADA and determining that a medical school did not have to accommodate a student who "from 2011 to 2014, . . . was unable to complete a single full semester of medical school without suffering a relapse of his major depressive disorder during the semester," which resulted in the plaintiff engaging in extreme binge drinking and in-patient psychiatric hospitalization); *Caporicci v. Chipotle Mexican Grill, Inc.*, 189 F. Supp. 3d 1314, 1317 (M.D. Fla. 2016) (applying this rationale where the plaintiff was crying and having daily panic attacks at work, had to be taken off shifts, and after starting a new medication, "was very slow, messed up orders, and was incoherent").

However, even assuming that the facts alleged here are sufficient for Plaintiff's actions to constitute a legitimate basis for Defendant to deny him an accommodation, as discussed in the disability discrimination section above, Plaintiff has satisfied his burden at this stage to sufficiently allege that Defendant's reason was pretextual. Indeed, the allegations of pretext are even more applicable here. Specifically, Defendant's alleged non-discriminatory reason for refusing to accommodate Plaintiff is Plaintiff's purportedly "dangerous misconduct." However,


Defendant allowed Plaintiff to continue to work for two more months after that conduct without repercussion. Based on these facts, a reasonable juror could conclude that Defendant did not perceive Plaintiff's behavior as dangerous and that this reason was pretextual. Therefore, Defendant has not met its burden to establish that Plaintiff's failure to accommodate claims should be dismissed at this time.

### E. Hostile Work Environment

"To establish a hostile work environment claim, a plaintiff must show that: (1) he belongs to a protected group; (2) he suffered unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee . . . ; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for that environment under a theory of either direct liability or vicarious liability." *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1153 (11th Cir. 2020). Defendant argues that Plaintiff has failed to establish elements four and five—that the harassment was sufficiently severe or pervasive and that Defendant can be held liable. Because the Court agrees that Plaintiff has not adequately alleged that the harassment was sufficiently severe or pervasive, it does not address the latter argument.

"To show that harassment was sufficiently severe or pervasive to alter the terms or conditions of his employment, an employee must prove that his work

environment was both subjectively and objectively hostile." *Id.* Defendant appears to only address the objectively hostile prong. Courts "consider four factors when evaluating whether harassment was objectively hostile: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* (quotation omitted). "Although these factors help guide the inquiry, the objective element is not subject to mathematical precision"; instead, the evidence must be viewed "cumulatively and in the totality of the circumstances." *Id.* (internal citation and quotation omitted).

There are no allegations relating to Plaintiff being physically threatened or any interference with his job performance. Instead, Plaintiff focuses on the frequency of the conduct. Plaintiff alleges that Jewish slurs were used in his presence "frequently" and "pervasive[ly]" beginning at least by 2018 and continuing through the end of his employment in 2020.[2] (Doc. 28 at 4). Plaintiff also provides eight examples of such slurs. (*Id.*). These allegations, however, fall short of sufficiently

---

[2] In his Response, Plaintiff argues that these comments were "a daily occurrence." (Doc. 51 at 13). However, no such allegations appear in the Amended Complaint, and Plaintiff "cannot amend [his] Complaint via a response to a motion to dismiss." *Johnson v. Ginnie Mae*, No. 4:12-cv-0098-HLM, 2012 U.S. Dist. LEXIS 207641, at *30 (N.D. Ga. June 5, 2012) (citing *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Payne v. Ryder Sys.*, 173 F.R.D. 537, 540 (M.D. Fla. 1997)).

alleging a hostile work environment claim. *See Sutherland v. Boehringer-Ingelheim Pharm., Inc.*, 700 F. App'x 955, 960–61 (11th Cir. 2017) (determining that the plaintiff's hostile work environment claim failed where the plaintiff only stated generally that supervisors made comments "when they could" but did not provide any specificity as to how many times such comments were made and the plaintiff did not show "that she was physically threatened or publicly humiliated . . . [or] unable to perform her job responsibilities"); *Alexander v. Opelika City Schs.*, 352 F. App'x 390, 393 (11th Cir. 2009) (determining that the hostile work environment claim failed where the plaintiff "testified that he was called 'boy' constantly, but could only recall eight specific instances over the course of two years"); *Weatherly v. ABC Legal, Inc.*, No. 1:19-cv-23678, 2021 WL 3113058, at *5 (S.D. Fla. July 22, 2021) (dismissing Plaintiff's hostile work environment claim where she "only offer[ed] conclusory allegations as to the frequency and severity of the conduct (referring to the conduct as "constant" and "severe") and whether the conduct was physically threatening or humiliating or interfered with Plaintiff's job performance"); *c.f. Fernandez*, 961 F.3d at 1154 (finding sufficient to create a triable issue evidence that slurs "occurred daily or every other day over a two-month period"). Plaintiff's hostile work environment claims will be dismissed.

### F.     Retaliation

"To establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relationship between the two events." *Johnson*, 948 F.3d at 1325 (quotation omitted). The parties agree that Plaintiff has sufficiently alleged that he engaged in protected activity in 2018 when he complained to Defendant about the anti-Semitic comments made by his co-workers. The parties also agree that the termination of Plaintiff's employment constitutes an adverse employment action. But Plaintiff also argues that Defendant's failure to investigate constitutes an additional adverse employment action. The parties also disagree as to whether Plaintiff has sufficiently alleged a causal relationship between Plaintiff's protected activity and his termination.

Plaintiff, relying on out-of-circuit case law, argues that Defendant's failure to investigate constitutes an adverse employment action. "As an initial matter, it is important to recognize that the 'adverse action' test applied to retaliation claims is distinct from the one applied to disparate treatment claims." *Barr v. Silberg*, No. 4:17-cv-00203, 2020 U.S. Dist. LEXIS 156932, at *19 (S.D. Ga. Aug. 28, 2020) (citing *Crawford v. Carroll*, 529 F.3d 961, 974 n.14 (11th Cir. 2008)). To establish an adverse employment action for a retaliation claim, "[t]he plaintiff must show that a reasonable employee would have found the challenged action materially adverse enough to dissuade a reasonable worker from making or supporting a charge of

discrimination." *Rutledge v. SunTrust Bank*, 262 F. App'x 956, 958 (11th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)). Applying this test, courts in the Eleventh Circuit have determined that "an employer's failure to investigate, standing by itself, does not constitute an adverse employment action for purposes of Title VII." *Perry v. Schumacher Grp.*, No. 2:13-cv-36-FtM-29DNF, 2020 U.S. Dist. LEXIS 221057, at *8 (M.D. Fla. Nov. 25, 2020) (collecting cases); *Barr*, 2020 U.S. Dist. LEXIS 156932, at *19 n.6 (collecting cases); *see also Zwick v. USF Bd. of Trs.*, 505 F. Supp. 3d 1317, 1335 n.16 (M.D. Fla. 2020) ("[D]issatisfaction with an investigation [cannot] constitute an adverse employment decision.").

Indeed, the only case that the Court has found within this Circuit that even allows for the possibility of a failure to investigate to be an adverse employment action, noted that it must be paired with some other "material adverse effect on the complaining employee." *Sturdivant v. City of Atlanta*, No. 1:11-cv-2310-RLV-JSA, 2014 U.S. Dist. LEXIS 186658, at *56 (N.D. Ga. Feb. 7, 2014). Plaintiff appears to be arguing that the hostile work environment caused by Defendant's failure to take proper action upon Plaintiff's complaint constitutes such a material adverse effect. However, as explained above, Plaintiff has failed to state a claim for hostile work environment, so it cannot form the basis for Plaintiff's claim here. As such, Plaintiff has not alleged that Defendant's failure to investigate constituted an adverse

employment action. Therefore, the only adverse employment action left to discuss is Plaintiff's termination.

As noted above, Defendant does not dispute that Plaintiff's termination constitutes an adverse employment action, but Defendant argues that Plaintiff has failed to sufficiently allege facts to establish causation between his protected activity and his termination. "A plaintiff can establish a prima facie causal link by showing close temporal proximity between the statutorily protected activity and the adverse action." *Tolar v. Bradley Arant Boult Cummings, LLP*, 997 F.3d 1280, 1294 (11th Cir. 2021). However, "mere temporal proximity, without more, must be very close." *Id.*

Plaintiff's protected activity occurred in 2018, and his termination was in 2020. This temporal proximity is simply too attenuated to establish causation. *Maniccia v. Brown*, 171 F.3d 1364, 1370 (11th Cir. 1999) (noting that the fifteen-month lapse in time between the plaintiff's protected activity and the alleged adverse employment action "belie[d the plaintiff's] assertion" that the protected activity caused the adverse employment actions); *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010) ("Even a three-month interval between the protected expression and the employment action . . . is too long."); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not

enough." (collecting cases)); *c.f. Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) ("[A] period as much as one month between the protected expression and the adverse action is not too protracted.").

Plaintiff argues that he should be permitted to engage in discovery to determine whether there is additional evidence of causation and that dismissal of his claims at this stage is inappropriate. However, "discovery follows 'the filing of a well-pleaded complaint. It is not a device to enable the plaintiff to make a case when his complaint has failed to state a claim.'" *Carter v. Dekalb Cnty.*, 521 F. App'x 725, 728 (11th Cir. 2013) (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Brannan v. West*, No. 17-0493-WS-M, 2018 U.S. Dist. LEXIS 47220, at *11 n.4 (S.D. Ala. Mar. 22, 2018) (collecting cases). Accordingly, Plaintiff has failed to state a claim for retaliation, and those claims will be dismissed.

### IV. CONCLUSION

As explained above, nine of Plaintiff's claims will be dismissed. This is Plaintiff's second complaint in this case, and Plaintiff has not requested leave to amend. Therefore, none will be granted. *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a

plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."). Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion to Dismiss (Doc. 40) is **GRANTED in part** and **DENIED in part**.
2. Counts V, VI, VII, VIII, IX, X, XI, XII, XIII are **DISMISSED**.
3. The Motion is otherwise **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on July 5, 2022.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record